NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ANGIE W., | ) |
| | ) Supreme Court No. S-18073 |
| Appellant, | ) |
| | ) Superior Court Nos. 3PA-19-00149/ |
| v. | ) 00150 CN |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) No. 1877 – February 16, 2022 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Harriet Dinegar Milks, Senior Assistant Attorney General, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Margaret McWilliams, Assistant Public Advocate, Juneau, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices. [Henderson, Justice, not participating.]

## I.    INTRODUCTION

The superior court terminated a mother's parental rights to her two sons on grounds of abandonment. The mother appeals, arguing that the Office of Children's

---

\*    Entered under Alaska Appellate Rule 214.

Services (OCS) neglected to refer her to mental health treatment and therefore failed to make reasonable efforts to reunite her with her children. However, the evidence supports the superior court's finding that the mother's failure to reunite with her children was not due to any deficiency in OCS's reunification efforts. Because OCS's efforts were reasonable under the circumstances, we affirm the termination of the mother's parental rights.

## II.    FACTS AND PROCEEDINGS

### A.    The Family's History With OCS

Angie W. is the mother of 16-year-old Tyler W. and 14-year-old Spenser B.[1] The two boys were first removed from Angie's care in January 2014 due to concerns of neglect. Angie completed a substance abuse assessment and psychological evaluation and participated in supervised visitation. The assessment reported that Angie struggled with amphetamine and other stimulant dependence. It recommended that she complete an intensive outpatient program, undergo random drug testing, and enroll in "[p]sycho-educational programs." The psychological evaluation, performed by Dr. Grace Long, reported that Angie struggled with "Stimulant Use Disorder, in partial remission," and "Adjustment Disorder, with anxiety." Dr. Long recommended that Angie participate "in community meetings and structure that focus on recovery issues," find a sponsor, connect with sober friends and family, and attend individual therapy.

After her assessment Angie participated in most of the recommended interventions, including individual counseling. Despite missing one drug test (which counted as a positive result), Angie's test results were negative. And although she occasionally cancelled or failed to show up, Angie regularly attended visits with Tyler and Spenser in their foster home. The boys were returned to her care in 2016.

---

[1]    We use pseudonyms to protect the family's privacy.

**B.     The Boys' Second Removal From Angie's Care**

According to OCS, it continued to receive reports of harm in the years that followed. The reports alleged that Angie was neglecting her children and abusing drugs, that there was domestic violence between Angie and her boyfriend, and that the boys had poor school attendance, unsafe living conditions, and inadequate food. After some of these reports were substantiated in September 2019, OCS again removed Tyler and Spenser from Angie's care.

In November 2019 OCS created another case plan for Angie. It provided that she undergo random drug testing, participate in a substance abuse assessment and follow its recommendations, complete a domestic violence assessment and follow its recommendations, have consistent contact with Tyler and Spenser, and attend parenting classes. A case plan evaluation in May 2020 added that Angie would "manage her mental health by meeting her own needs." Angie did not sign the case plan or the evaluation and did not engage with any of the recommended services.

It is undisputed that Angie's caseworker made extensive attempts to contact her throughout 2020. The caseworker attempted to call Angie 14 times between January and September. On February 11 she sent Angie a letter with the caseworker's contact information and a copy of Angie's case plan, and on February 27 the caseworker visited Angie's last known address. The caseworker also contacted Angie's mother and the boys' foster parents to ask whether they had heard from Angie. None of these efforts to reach Angie were successful.

Angie contacted the caseworker once during 2020, on August 13, to let OCS know that her father could be a placement for the boys. OCS had filed a petition for termination in April, and Angie's caseworker gave her the call-in number for court and set up a time to meet after the termination hearing. Angie did not show up. The caseworker's attempts to contact her after that were also unsuccessful. At the time of

trial Angie's only recent contact with Tyler and Spenser was by Facebook Messenger; she had not visited them in months.

### C. Proceedings

A termination trial was held on February 10, 2021. Angie was not present. Her attorney stipulated to OCS's offer of proof regarding its efforts from January through December 2020, and OCS offered the testimony of the assigned caseworker. No other witnesses testified.

The superior court found that Tyler and Spenser were children in need of aid due to abandonment; that Angie had not remedied the conduct or conditions that put the children at risk of harm; that OCS's efforts to reunite the family satisfied the reasonable efforts requirements of AS 47.10.086; and that terminating Angie's parental rights was in Tyler's and Spenser's best interests. The court focused on OCS's many attempts to contact Angie, her lack of responsiveness, and her lack of significant or consistent contact with the boys for at least a year. Angie appeals, challenging only the finding that OCS made reasonable efforts.

## III. STANDARD OF REVIEW

In a child in need of aid case, we review a superior court's factual findings for clear error.[2] "Findings are clearly erroneous if review of the entire record leaves us with a 'definite and firm conviction that a mistake has been made.' "[3] "[C]onflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh

---

[2] *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 788 (Alaska 2019).

[3] *Id.* (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 427-28 (Alaska 2012)).

evidence when the record provides clear support for the superior court's ruling."[4] "[T]he deference accorded to a superior court's factual findings is particularly appropriate in close cases."[5]

" 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.' 'When reviewing mixed questions of law and fact, we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[6] "We bear in mind at all times that terminating parental rights is a drastic measure."[7]

## IV. DISCUSSION

**The Superior Court Did Not Clearly Err In Finding That OCS Made Reasonable Efforts To Reunite Angie With Her Children.**

Before terminating parental rights, the superior court must find that OCS made "timely, reasonable efforts to provide family support services" to help parents remedy their conduct.[8] These efforts must involve " '(1) identify[ing] family support services that will assist the parent . . . in remedying the conduct or conditions in the home that made the child a child in need of aid' and '(2) actively offer[ing] the parent . . . and

---

[4]    *Id.* (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[5]    *Id.* (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1260 (Alaska 2010)).

[6]    *Sherry R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.,* 332 P.3d 1268, 1273-74 (Alaska 2014) (first quoting *Sherman B.*, 290 P.3d at 428; and then quoting *Ben M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 204 P.3d 1013, 1018 (Alaska 2009)).

[7]    *Charles S.*, 442 P.3d at 788 (quoting *Christina J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[8]    AS 47.10.086(a); AS 47.10.088(a)(3).

refer[ring] the parent' to these services."[9]  "In reviewing whether OCS made reasonable efforts, a court considers the state's reunification efforts in their entirety"[10] and "may consider 'a parent's demonstrated lack of willingness to participate in treatment.' "[11] "[T]he State has some discretion both in determining what efforts to pursue and when to pursue them."[12]

Angie argues that OCS's efforts fail the statutory test because it did not assist her with her mental health even though it "was well aware of [her] mental health struggles."  She points to her case plan and OCS's case plan evaluation; the case plan does not mention mental health and the evaluation provides that Angie would "manage her mental health by meeting her own needs."[13]  According to Angie, Dr. Long's observations in Angie's psychological evaluation — which revealed that she has problems with authority figures, is "suspicious of others' motives," and "tends to react . . . impulsively" — indicated that "[i]t was unreasonable for OCS to expect her to

---

**9**      *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1164-65 (Alaska 2016) (alterations in original) (quoting AS 47.10.086(a)(1)-(2)).

**10**      *Barbara P.*, 234 P.3d at 1262.

**11**      *Philip J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 314 P.3d 518, 527 (Alaska 2013) (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1114 (Alaska 2010)) (discussing active efforts requirement in ICWA cases).

**12**      *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 432 (Alaska 2012).

**13**      "[M]eeting her own [mental health] needs" is identified in the case plan evaluation as a goal, not a plan.  The document records that Angie has made "[n]o [p]rogress" in meeting this goal, explaining that she "has not engaged with the department and has been unable to demonstrate her ability to manage her mental health needs."

engage in a productive manner without some mental health treatment."[14]

Angie points for support to *Lucy J. v. State, Department of Health & Social Services, Office of Children's Services*[15] and *Emma D. v. State, Department of Health & Social Services, Office of Children's Services*.[16] In *Lucy J.* a mother argued that OCS's provision of reunification services failed to reasonably accommodate her disability — a significant brain dysfunction that may have been associated with fetal alcohol spectrum disorder.[17] We held that "if OCS 'fails to take into account the parents' limitations or disabilities and make any reasonable accommodations, then it cannot be found that reasonable efforts were made to reunite the family.' "[18] In *Emma D.* we rejected a mother's argument that OCS failed to account for her bipolar disorder and potential fetal alcohol spectrum disorder because although OCS had referred her to mental health services, she was "unwilling[] to engage in treatment or services."[19] Angie distinguishes

---

[14] Angie also notes that OCS's Petition for Termination was inaccurate, "reporting only on one of the two evaluati[ons], . . . mis-stating [Angie's] final diagnosis, and wrongly claiming that [Angie] was 'unable to fully complete her assessment.' " Angie argues that "[t]his omission demonstrates that the state either intentionally misrepresented the record, or through negligence was unaware of Angie's diagnoses and Dr. Long's full report." The petition did incorrectly state that Angie was unable to complete her assessment and that she was diagnosed with "Unspecified Personality Disorder." But Angie's actual diagnoses were revealed at trial, the error did not impact the superior court's findings, and there is nothing to suggest that OCS intended to misrepresent the record.

[15] 244 P.3d 1099 (Alaska 2010).

[16] 322 P.3d 842 (Alaska 2014).

[17] 244 P.3d at 1106, 1115.

[18] *Id.* at 1116 (quoting *In re Terry*, 610 N.W.2d 563, 570 (Mich. App. 2000)).

[19] 322 P.3d at 850-52.

*Emma D.* from her own case by emphasizing that her case plan "failed to 'set out a plan for [her] to receive mental health treatment' in any capacity."

But unlike *Lucy J.* and *Emma D.*, the record here does not show that Angie was given a formal diagnosis of a specific mental health disability.[20] In fact, Dr. Long described her as having average cognitive functioning, a significantly better than average "ability to work through nonverbal problems," and "few, if any, major psychological concerns." OCS determined that Angie's substance abuse, domestic violence, and neglect of the boys — not her anxiety or impulsiveness — were the conditions that put Tyler and Spenser in need of aid. OCS accordingly referred Angie to substance abuse treatment programs and a domestic violence assessment.[21] This was a reasonable exercise of OCS's discretion.

More importantly, OCS's efforts "need only be reasonable under the circumstances, depending on the parent's . . . willingness to participate in treatment . . . and the parent's level of cooperation."[22] The superior court, citing *E.A. v. State, Division of Family and Youth Services,*[23] observed that even if OCS does not

---

[20] Dr. Long diagnosed Angie with "Stimulant Use Disorder, in partial remission," and "Adjustment Disorder, with anxiety." Adjustment disorders are "a group of mental and behavioral disorders in which the development of symptoms is related to the presence of some environmental stressor or life event and is expected to remit when the stress ceases." *Adjustment Disorders*, STEDMAN'S MEDICAL DICTIONARY (2014).

[21] While Dr. Long did recommend that Angie participate in individual therapy, this recommendation was provided as a way to help Angie "in both her recovery and parenting efforts" — a supplement to her substance abuse treatment rather than an independent mental health intervention.

[22] *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015).

[23] 46 P.3d 986, 990-91 (Alaska 2002).

provide direct services to a parent, "[e]fforts consisting largely of failed attempts to contact a parent or obtain information from them . . . may be sufficient where the parent engages in evasive, combative conduct that renders the provision of services practically impossible."  And as we said in *Lucy J.*:

> [The mother's] repeated failures to complete the elements of her case plan, engage in meaningful substance abuse treatment, and show up for meetings that OCS had arranged for her provided the trial court with evidence that she was more hindered by her unwillingness to participate in the plan than she was by a lack of capacity to do so.[24]

Here, similarly, the stipulated factual record shows that OCS called Angie more than a dozen times over the course of the year preceding trial without making contact.  Angie's caseworker testified that she had written a new case plan that included a mental health component, and if she had reached Angie she would have talked to her about her initial assessment and referred her to mental health services if necessary.  But there was never an opportunity to do so because of Angie's failure to respond to OCS's overtures; nor did Angie engage in any other aspect of her case plan.  OCS's efforts were reasonable under the circumstances, and the superior court did not err in finding that OCS made reasonable efforts to reunite Angie with her two sons.

## V.   CONCLUSION

The superior court order terminating Angie's parental rights is AFFIRMED.

---

[24]      *Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1117 (Alaska 2010).